UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT J. ZEIS,

                                        Plaintiff,

                                                            **Hon. Hugh B. Scott**

                        v.                                  05CV824A

                                                            **Report
                                                            and
                                                            Recommendation**

MICHAEL J. ASTRUE, Commissioner of
Social Security[1],

                                Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 9 (defendant), 11 (plaintiff)) and plaintiff's motion for addition to the administrative record (Docket No. 11, <u>see</u> Docket Nos. 12, 13 (Exhibit A, the addition to the record)).  For convenience, plaintiff's motion to add to the record (which could be considered in a separate Order) will be considered here in this Report & Recommendation.

## <u>INTRODUCTION</u>

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits.

---

[1]On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security.  Pursuant to Federal Rule of Civil Procedure 25(d)(1), Mr. Astrue is substituted for now former Commissioner Jo Anne B. Barnhart as Defendant in this action; no further action is required, 42 U.S.C. § 405(g).

## PROCEDURAL BACKGROUND

Plaintiff, Robert J. Zeis ("Zeis" or "plaintiff"), filed an application for disability insurance

benefits on May 18, 2004. (R. 170-72[2].)  Zeis' application was denied on July 1, 2004.  (R. 173-

77.)  Zeis appeared before Administrative Law Judge Karl Alexander ("ALJ"), who considered

the case de novo and concluded, in a written decision dated June 27, 2005, that plaintiff was not

disabled within the meaning of the Social Security Act.  (R. 13-24.)  The ALJ's decision became

the final decision of the Commissioner when the Appeals Council denied plaintiff's request for

review on September 22, 2005, and further on October 5, 2005, upon consideration of additional

evidence.  (R. 3-12.)

Plaintiff commenced this action on November 21, 2005 (Docket No. 1).  The

Commissioner moved for judgment on the pleadings (Docket No. 9), and plaintiff cross-moved

for judgment on the pleadings and additions to record (Docket No. 11), pursuant to Fed. R. Civ.

P. 12(c).  The motions were argued and submitted on January 31, 2007 (Docket No. 17).

Meanwhile, plaintiff filed a second application, on December 2, 2005, for Social Security

benefits, which was granted on April 25, 2006.  In the grant of that application, plaintiff's

disability was deemed to have begun as of June 28, 2005, a day after the ALJ denied the first

application.  (Docket No. 12, Pl. Atty. Aff.; see Docket No. 13, Ex. A.)

## FACTUAL BACKGROUND

On March 4, 2001, Zeis injured his leg at the workplace when struck by a co-worker

operating a forklift (Docket No. 10, Def. Comm'r Memo. at 3; R. 187).  Plaintiff's leg fracture

---

[2]  References noted as "(R.___)" are to the certified record of the administrative
proceedings.

2

required surgery and the insertion of a titanium rod through his fibula and tibula (Docket No. 10,

Def. Comm'r Memo. at 3; R. 188).  Upon recovery from his surgery, Zeis went back to his

previous job in a cheese factory, where his duties included moving cheese in a refrigerated cell.

He stopped working in October 2003 because his leg hurt too much from standing and walking in

a cold environment (Docket No. 10, Def. Comm'r Memo. at 3; R. 189-90).

Plaintiff was 49 years old when the ALJ decided his claim in 2005.  After graduating

from high school, he worked in several jobs and was employed over the years as a stock clerk, a

forklift operator, a store laborer and a tool crib attendant.  (R. 200.)  In his Complaint, he claimed

impairment from status post-fracture of the tibia and fibula with lower extremity nerve damage,

pain and swelling; and ischemic angina (Docket No. 1, Compl. ¶ 5).  Plaintiff asserted that his

disability or disabilities began on October 15, 2003 (id. ¶ 6).

## MEDICAL AND VOCATIONAL EVIDENCE

*Medical Record*

At his hearing, plaintiff testified that since he was injured and underwent surgery he has

experienced a burning pain in his left leg, even when sitting (Docket No. 10, Def. Comm'r

Memo. at 4; R. 190-91), and that he needs to take several naps throughout the day because of the

drowsiness caused by his medication (Docket No. 10, Def. Comm'r Memo. at 21; R. 192, 194-

95).

After his injury, plaintiff was hospitalized at Buffalo Mercy Hospital where he underwent

surgery performed by Dr. John Callahan on March 5, 2001 (R. 94).  Dr. Callahan then undertook

plaintiff's post-operative care, and he saw plaintiff for monthly follow-up evaluations until

July 2002.  Dr. Callahan then opined that plaintiff had reached maximum medical improvement

3

and advised that Zeis needed no further visits with him.  (R. 124.)  In June 2003, however,

plaintiff returned to Dr. Callahan lamenting pain in his left foot, which was attributed to mild

plantar fasciitis (R. 122-23).  In December 2003, Dr. Callahan diagnosed left tibia neuropathy

and related pain, after reviewing EMG/NCV (electrodiagnostic) studies by Dr. S. David Miller,

and referred plaintiff to Dr. Bernhard Rohrbacker, a foot and ankle specialist, and to Dr. Miller

for pain management (R. 118).  After his last examination of plaintiff in March 2004,

Dr. Callahan opined that Zeis may not be able to return to his work in the cheese factory, but was

clearly capable of performing sedentary work (R. 116).  The ALJ noted that Dr. Callahan thought

that plaintiff's return to sedentary work would be therapeutic for plaintiff (R. 19; see R. 116

(noting that sedentary work would "be beneficial to him")).

    In March 2004, Dr. Rohrbacker found that plaintiff ambulated with a slight antalgic limp,

prescribed a Jobst compression stocking to minimize swelling in the plaintiff's ankle and ordered

an MRI to rule out tendon injury (R. 114).  In June 2004, Dr. Miller reported that Zeis

complained of aching and burning pain in his left foot, with intensity of 7 on a scale of 1 to 10,

and prescribed Neurontin, 300 mg. at bedtime, and Ibuprofen 400 mg. as needed, up to four times

per day (R. 150).  Dr. Miller described plaintiff as having a moderate disability and capable of

performing desk level or bench jobs, but should avoid standing and walking (id.).  In July 2004,

Dr. Miller increased plaintiff's dosage of Neurontin 300 mg. to three times per day (R. 163).  In

August 2004, Dr. Miller prescribed Neurontin 600 mg. three times per day, but reported that

plaintiff was not taking Neurontin during the day because it caused sedation (R. 162).  During

subsequent visits, Dr. Miller maintained the prescription for Neurontin 600 mg. at bedtime, but

observed again that plaintiff was not taking Neurontin during the day and reported that plaintiff's foot was discolored, swollen and tender (R. 161, 164).

On June 16, 2004, plaintiff was examined by Dr. Richard Eales, the consultative examiner for the Commissioner.  Dr. Eales found that Zeis had two types of pain, one related to the screws surgically inserted in his left leg, the other related to a neuropathy affecting the outside of his left foot, which plaintiff described as hot and burning, particularly when on his feet for extended periods (R. 154).  On that occasion, Zeis stated that he took Ibuprofen 400 mg. several times a week with good control of his pain (R. 154).  With respect to daily living activities, Zeis reported to Dr. Eales that he helped his wife with such chores as dusting and vacuuming, mowed his small lawn and did the gardening, and shoveled snow for short periods (R. 156).  He said that he could climb up stairs, if not required to do it repeatedly, and that he could walk half a mile and drive his car (id.).  His other activities at home were of a sedentary nature, including watching TV, reading, and using the computer while keeping his left leg elevated (id.).  Dr. Eales diagnosed status post compound fracture of the left tibia and fibula with surgical repair, hypertension, hypercholesterolemia, and possible coronary artery disease (R. 158).  Dr. Eales observed that plaintiff appeared to be in no acute distress and that the only abnormality was a mild limp favoring left (R. 156-57).  He concluded that plaintiff's activities were only mildly diminished and that he would be expected to have mild limitations standing and walking (R. 159).

*Vocational Expert's Opinion*

The vocational expert testified that all of plaintiff's previous jobs required either medium or heavy physical exertion (R. 200).  Consequently, the ALJ presented a hypothetical which

assumed an individual of plaintiff's age, educational background, and work history and who

would be able to perform a range of light work with a sit/stand option (id.).  The ALJ then asked

what work was available for a hypothetical person assumed to be able to perform postural

movements occasionally except could not climb ladders, ropes or scaffolds, and should not be

exposed to temperature extremes of dampness or humidity (R. 201).  The vocational expert

testified that this hypothetical individual could perform light jobs with a sedentary option, such

as a photocopy machine operator, with 165 positions in the Western New York (R. 201); a food

and beverage industry order clerk, with 752 positions here (id.); or a call-out operator, with

286 positions in this regional area (id.).

The ALJ specifically asked whether these jobs would permit a person to elevate one of

his legs for the height of the chair that person was sitting on and the vocational expert stated that

those jobs could be performed while keeping one leg so elevated (R. 201-02).  In response to a

question posed by plaintiff's attorney regarding side effects of the prescription medication

Neurontin that it caused a hypothetical person to be off-task 50 percent of the day, the vocational

expert stated that none of the jobs he had previously mentioned would be suitable  (R. 203).

*ALJ's Findings*

The ALJ found that Zeis' impairments, i.e., status post fracture of the left tibia and fibula,

and heart disease with angina, were "severe" under 20 C.F.R. § 404.1520(c), although they did

not equal one of the impairments listed in Appendix 1 of the relevant regulations, and that the

plaintiff was unable to perform any of his past relevant work (R. 23).  Further, the ALJ

determined that plaintiff retained the residual functional capacity to perform a significant range

of sedentary work in the national economy despite his impairments (id.).  In particular, the ALJ

found that plaintiff's testimony as to his need to keep his left leg elevated for extended periods of time and his need to take frequent naps throughout the week were not entirely credible and not supported by some of plaintiff's statements and other evidence in the record (R. 18-19).  The ALJ concluded that plaintiff was not disabled.

## DISCUSSION

I.      Plaintiff's Motion to Expand the Administrative Record

Plaintiff moves for an Order directing the Clerk to supplement the administrative record, pursuant to 42 U.S.C. § 405(g) and this Court's Local Civil Rule 7.1(a)(3), seeking to add "Exhibit A" (Docket No. 13) to the record in this matter.

The sixth sentence of § 405(g) states in part that "[t]he Court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding," id.  The Second Circuit has interpreted this statute as requiring a plaintiff to show that the proffered evidence is

> (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative.  The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently. Finally, claimant must show (3) good cause for her failure to present the evidence earlier.

Lisa v. Secretary of HHS, 940 F.2d 40, 43 (2d Cir. 1991) (internal quotations and citations omitted) (citing Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988)); see also Brewerton v. Barnhart, 235 F.R.D. 574, 579 (W.D.N.Y. 2006) (Siragusa, J.).

Plaintiff contends that almost all of the material is new (save one report from Dr. Miller that was previously provided) (Docket No. 12, Pl. Memo. at 20; see Docket No. 13, Ex. A, at 147, 150, 165, 168; R. 164, 168).  Second, he contends that the new information is material, that is relevant to the time period for which benefits were denied and probative, and there must be a reasonable possibility that the new evidence would have influenced the Commissioner to decide differently (Docket No. 12, Pl. Memo. at 21), see Tirado, supra, 842 F.2d at 597 (citations omitted).  Zeis argues that this evidence was probative because it resulted in the Commissioner granting benefits that were previously denied (id.).  Third, plaintiff argues that there is good cause why the proffered evidence could not be obtained for the administrative record since here most of the new evidence did not exist before the ALJ's decision on the first application (id. at 23).

In reply, the Commissioner argued that the material plaintiff proposed to add to the record was not new and that this Court could either remand to the Commissioner for further consideration of the new material or disregard the evidence (Docket No. 14, Def. Reply Memo. at 3, 2, citing 42 U.S.C. § 405(g) (sixth sentence)).  The Court may not reverse the Commissioner's decision based on the new evidence, 42 U.S.C. § 405(g), and the Court is restricted to the administrative record to determine if there was substantial evidence to support the Commissioner's decision (id. at 2).  The Commissioner argues that plaintiff does not seek a remand but instead an inappropriate de novo review by this Court leading to a remand merely to calculate benefits (id. at 3-4).  The Commissioner points out that some of this evidence was already submitted with the first application, hence it is not new and material (id. at 4).  Other evidence that predates the ALJ's decision does not create a reasonable probability of a different

8

decision by the Commissioner, since the ALJ already factored in plaintiff's testimony that he needed to elevate his leg (id. at 4-5).  The Commissioner argues that the fact that plaintiff's second application was granted does not mean that the decision to deny the first is erroneous (id. at 8).

Exhibit "A" consists of plaintiff's second disability claim filed on December 2, 2005 (Docket No. 12, Pl. Atty. Aff. ¶¶ 2, 2[3]), and plaintiff's unofficial copy of the documents in his possession for that application file (id. 2d ¶ 2).  This second application was approved on April 25, 2006, with plaintiff's disability there acknowledged as of June 28, 2005 (id. ¶ 4; Docket No. 13, Ex. A at 7, 13).  In that second application, the Commissioner set the later disability date based upon the ALJ's decision on the initial application that Zeis was not disabled through June 27, 2005 (Docket No. 13, Ex. A at 14; see id. at 21).  Since this application expressly dealt with material after Zeis' first application (and was filed after denial of that application), it cannot be used to supplement the record for that first application.  Thus, plaintiff's motion to expand the administrative record for this first application is **denied**.

II.     Disability Determination

With his granted second application, the issue here is whether Zeis was disabled between October 15, 2003 (the claimed onset date in this first application), and June 28, 2005 (the disability date found for his second application), or whether the ALJ's decision that the plaintiff was not under a disability during this over year and a half period is supported by substantial evidence.  See 42 U.S.C. § 405(g);  Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence

---

[3]This document has two paragraph 2s.

as a reasonable mind might accept as adequate to support a conclusion.'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated  Edison Co. v. National Labor Relations Bd.</u>, 305 U.S. 197, 229 (1938)).

A.      Standard

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that his impairment prevents him from returning to his previous type of employment.  <u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982).  Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative  substantial gainful work which exists in the national economy and which the plaintiff could perform."  <u>Id.</u>; <u>see also</u> <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1551 (2d Cir. 1983); <u>Parker v. Harris</u>, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant
regulations;

(4) whether the impairment prevents the plaintiff from continuing
his past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any
kind of work.

20 C.F.R. §§ 404.1520 & 416.920; <u>Berry</u>, <u>supra</u>, 675 F.2d at 467.  If a plaintiff is found to be

either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends.

20 C.F.R. §§ 404.1520(a) & 416.920(a); <u>Musgrave v. Sullivan</u>, 966 F.2d 1371, 1374 (10th Cir.

1992).  However, it should be noted that the ALJ has an affirmative duty to fully develop the

record.  <u>Gold v. Secretary</u>, 463 F.2d 38, 43 (2d Cir. 1972).

     In order to determine whether an admitted impairment prevents a claimant from

performing his past work, the ALJ is required to review the plaintiff's residual functional capacity

and the physical and mental demands of the work he has done in the past.  20 C.F.R.

§§ 404.1520(e) & 416.920(e).  When the plaintiff's impairment is a mental one, special "care

must be taken to obtain a  precise description of the particular job duties which are likely to

produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments,

working with other people, etc., in order to determine if the claimant's mental impairment is

compatible with the performance of such work."  <u>See</u> Social Security Ruling 82-62 (1982);

<u>Washington v. Shalala</u>, 37 F.3d 1437, 1442 (10th Cir. 1994).  The ALJ must then determine the

individual's ability to return to his past relevant work given his residual functional  capacity.
Washington, supra, 37 F.3d at 1442.

      B.      Application

     In the instant case, Zeis now argues that the ALJ's determination that he could sustain sedentary work was unsupported by substantial evidence and that the ALJ failed to develop the record in that respect.   Further, Zeis contends that the ALJ had no substantial evidence to support the ALJ's finding that Zeis' testimony was not totally credible as to his need to take frequent naps during the week.  He also argues that the ALJ improperly relied in his decision on the opinion of the state agency medical consultant, and that the ALJ had no evidence to assume in his hypothetical that the plaintiff could work in a full-time sedentary occupation with his foot elevated on an adjacent chair.

      1.      Plaintiff's Ability to Sustain Sedentary Work

     First, plaintiff argues that the ALJ had no substantial evidence that plaintiff could sustain sedentary work by resting his left leg on an adjacent chair while seated (Docket No. 12, Pl. Memo of Law at 12-15).  He points out that sedentary work involves "up to two hours of standing and walking and six hours of sitting in an eight-hour work day" (id. at 13 (quoting Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000))).  He observes that while all occupations require a mixture of sitting, standing or walking, no occupations permit the employee to lie down or recline during work.  He argues that the ALJ erred in assuming that the plaintiff needed to elevate his leg to the height of a chair in the face of plaintiff's testimony that sometimes he elevates his leg to the back end of his couch (R. 192), and that "the higher the better" (R. 196).  He further

argues that the ALJ failed to seek clarification as to how high plaintiff needs to elevate his leg and for how long during the day (Docket No. 12, Pl. Memo. of Law at 19-20).

The Commissioner argues that three treating and examining physicians consistently stated in their reports that plaintiff was not disabled and could perform a range of sedentary work that did not require a lot of standing or walking (R. 116, 119, 121, 150, 159).  He points out that where a plaintiff complains of impairments that are more severe than those established by the objective medical findings, the ALJ will consider other evidence such as plaintiff's daily activities, the nature, duration and extent of his symptoms and the treatment provided (Docket No. 10, Def. Comm'r Memo. at 20 (citing 20 C.F.R. § 404.1529(c)(3); SSR 96-7p)).  He argues that Zeis testified to engaging in a wide range of activities which show that he was not as limited as he asserted.  Therefore, he argues that the ALJ was entitled to conclude that plaintiff could perform sedentary work because his claims of totally disabling symptomatology were inconsistent with the objective medical evidence and with other portions of plaintiff's testimony (Docket No. 10, Def. Comm'r Memo. at 22).

The ALJ properly found that plaintiff had the ability to perform sedentary work.  First, the ALJ did not completely reject plaintiff's subjective claims of pain and limitation.  In determining plaintiff's residual functional capacity, the ALJ took into consideration Zeis' testimony as to his need to keep his leg elevated during the day (R. 21), and specifically asked the vocational expert to identify what type of sedentary job would allow plaintiff to elevate his leg for the height of the chair he would be sitting on (R. 201).  Second, the ALJ inquired into plaintiff's asserted need to keep his leg up (R. 193), and plaintiff explained that when he reads or uses the computer his leg is always up "[i]f it is not on an end table it's on a couch," or "it's on the chair with a pillow"

(R. 193), a couple of feet high up (R. 196). Third, Zeis testified that he was able to perform several activities during the day, such as picking up his children from school and making them lunch (R. 193-94), occasionally vacuuming and dusting the house (R. 194), mowing his lawn (R. 194), riding a bicycle once a week for about a mile (R. 197), and walking for half an hour (R. 196). Plaintiff's own testimony supports the ALJ's conclusion that plaintiff's symptoms and pain did not render him completely disabled.

2.      Plaintiff's Subjective Sedation Complaints

Plaintiff next argues that the ALJ discredited the plaintiff's testimony as to his need to take frequent naps during the week because of the sedation caused by his medication, i.e., Neurontin (Docket No. 12, Pl. Memo of Law at 15). He points out that, in evaluating a plaintiff's credibility, the ALJ must take into account all the evidence, including treating physician opinions (id. (citing 20 C.F.R. § 404.1529(c)(1))). He asserts that Dr. Miller reported in his notes that plaintiff complained of excessive sedation (R. 162, 168), and that he found it hard to tolerate the medication during the day (R. 161, 164). Therefore, Zeis concludes that the ALJ erred in not relying upon the plaintiff's testimony that Neurontin caused drowsiness and prevented the plaintiff from performing work throughout a normal 40-hour work week (Docket No. 12, Pl. Memo of Law at 16).

The Commissioner argues that nothing in the medical evidence supports plaintiff's claim that he needed to take frequent naps throughout the week (Docket No. 10, Def, Comm'r Memo. at 21). At oral argument, the Commissioner pointed out that plaintiff stated he was taking Ibuprofen during the day with good control of his pain and was taking Neurontin only at night (Dr. Eales report, R. 154).

14

At the administrative hearing, the ALJ asked Zeis several questions regarding his use of Neurontin and its effectiveness in reducing his leg and foot pain (R.191-92, 194-95).  Zeis answered that he was taking Neurontin as prescribed by his treating physician Dr. Miller – 300 mg. in the morning, 300 mg. in the afternoon, and 600 mg. at night (R. 191) – that the medication caused drowsiness in the morning (R. 192), and that he must take it at night in order to sleep (R. 192).  These statements partially contradict plaintiff's previous statements to Dr. Miller at follow-up visits, where he reported several times that he was not taking Neurontin during the day (R.161-62, 164, 168).  Yet plaintiff testified that he had taken Neurontin that morning and that his leg was still in pain (R. 195).  In light of plaintiff's inconsistent statements, the ALJ did not err in questioning plaintiff's credibility as to his need to take frequent naps during the day.  See Mongeour v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (whether substantial evidence supports a  finding on credibility is a question that the reviewing court must resolve by examining the entire record,  including contradictory evidence and evidence giving rise to conflicting inferences); Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999).  Likewise, the ALJ was entitled to consider plaintiff's testimony as to the range of activities he performed inside and outside the house (R.193-94, 196), to determine whether plaintiff's statements regarding his severe sedation were credible, 20 C.F.R. § 404.1529(c)(4) (plaintiff's statements are material to the ALJ's determination of disability).  Plaintiff testified that he helped his wife with several household chores and actively cared for his children by picking them up from school, attending their activities, preparing their meals, going on bike rides with them (R. 193-94, 196).  These statements show that plaintiff was active and alert during the day.  The ALJ's determination that

there was no objective medical or non-medical evidence supporting a finding that napping was a medical necessity was properly founded (R. 18).

3.      State Agency Medical Consultant's Opinion

Plaintiff points out that the ALJ accepted the opinion of D. Hart, the state agency medical consultant, that the plaintiff had the residual functional capacity to work in a sedentary job, and argues that the document written by the state agency disability examiner is not an acceptable medical source listed in 20 C.F.R. § 404.1513(a) because D. Hart is not a physician  (Docket No. 12, Pl. Memo of Law at 17 (citing R. 21)).

It is not clear from the record whether D. Hart is a licensed physician, nor does the Commissioner address this point in his brief.[4]  Cf. Social Security Ruling 96-6p ("State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of medical issues in disability claims under the Act.")  If the medical consultant in this case was a physician, his assessment of the plaintiff's physical residual functional capacity would qualify as an acceptable source for the ALJ's consideration pursuant to subsection (c) "statements about what [the plaintiff] can still do," specifically stating that "[a]t the administrative law judge and Appeals Council level . . . we will consider residual functional capacity assessments made by State agency medical and psychological consultants . . . made by non-examining physicians and psychologists based on their review of the evidence in the case record," provided that the statements rely upon and cite to an acceptable medical source's opinion about the plaintiff's ability to do work-related activities.  20 C.F.R. § 404.1513(c).  In

---

[4]The document at issue, captioned "PHYSICAL RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT" (R. 82), bears the signature "D. Hart" in the space designated for the medical consultant's signature (R. 87).

this case, the medical consultant stated that, in assessing the plaintiff's physical residual

functional capacity, he adopted the opinion of plaintiff's treating physician Dr. Miller reporting

that the plaintiff was able to perform sedentary work (R. 86).

Even assuming that the medical consultant in this case was not a physician, this

technical issue would not warrant a remand of this matter for further inquiry into the

qualifications of the medical consultant.  First, the medical consultant merely reported the

conclusions of Dr. Miller that Zeis was capable of performing sedentary work (R. 150).  Second,

in other parts of his decision the ALJ relied directly on the opinions of plaintiff's treating

physicians Drs. Miller and Callahan, and consultative examiner Dr. Eales, all consistently stating

that plaintiff's disability was moderate and would permit him to work in a sedentary job (R.116,

150, 159).  Accordingly, the ALJ's decision was supported by substantial evidence on this point.

4.      Vocational Expert's Testimony

Zeis next argues that there was no evidence supporting the ALJ's assumption in his

hypothetical that the plaintiff could perform a full-time sedentary occupation with his foot

elevated on an adjacent chair.  Therefore, he contends that the vocational expert's opinion did not

constitute substantial evidence to support the ALJ's decision.  (Docket No. 12, Pl. Memo of Law

at 18-19.)

In assessing the plaintiff's ability to perform sedentary work, the ALJ considered

plaintiff's additional limitations derived from the pain in his left foot and leg.  The ALJ relied on

Zeis' own testimony at the hearing, when he stated that, among his activities, he would read or

play on the computer while sitting with his leg elevated on an end table, a couch, or a chair (R.

193-94).  Plaintiff's own testimony provided the ALJ with the evidence supporting the ALJ's

assumption in formulating his hypothetical for the vocational expert.  Therefore, the ALJ

properly found that plaintiff could perform sedentary jobs with his foot elevated to the height of a

chair.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner

be **AFFIRMED**.  Defendant's motion for judgment on the pleadings (Docket No. 9) should be

**granted** and plaintiff's cross-motion for similar relief in his favor (Docket No. 11) should be

**denied**.

Plaintiff's motion to expand the administrative record (Docket No. 11, <u>see</u> Docket

Nos. 12, 13) is **denied**.


Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report &

Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the

Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of**

**this Court *within ten (10) days* after receipt of a copy of this Report & Recommendation in**

**accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil**

**Rule 72.3(a).  <u>Failure to file objections to this report & recommendation within the</u>**

**<u>specified time or to request an extension of such time waives the right to appeal any</u>**

**<u>subsequent district court's order adopting the recommendations contained herein.</u>**  Thomas

v. Arn, 474 U.S. 140 (1985); <u>F.D.I.C. v. Hillcrest Associates</u>, 66 F.3d 566 (2d Cir. 1995);

<u>Wesolak v. Canadair Ltd.</u>, 838 F.2d 55 (2d Cir. 1988).

The District Court on <u>de novo</u> review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  <u>See</u> <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **<u>Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.</u>**

So Ordered.

/s/ Hugh B. Scott

Hon. Hugh B. Scott<br>United States Magistrate Judge

Buffalo, New York
May 16, 2007